STATE OF RHODE ISLAND
NEWPORT, SC

SUPERIOR COURT

PATRICK AGIN by and through his mother HEIDI FARRINGTON,
PLAINTIFF,

vs.

PORTSMOUTH SCHOOL COMMITTEE, SYLVIA WEDGE, MICHAEL BUDDEMEYER, E. RICHARD CARPENTER, JAMIE R.B. HEANEY, TERRI D. CONTRIVEND, DOUGLAS L. WILKEY, MARJOURIE LEVESQUE, in their capacities as members of the Portsmouth School Committee, and ROBERT LITTLEFIELD, in his capacity as Principal of Portsmouth High School,
DEFENDANTS.

NC06-0609

**MOTION OF PLAINTIFF FOR A**
**TEMPORARY RESTRINING ORDER**

Plaintiff Patrick Agin by and through his mother Heidi Farrington, moves for a temporary restraining order preventing defendants Portsmouth School District and Robert Littlefield, principal of Portsmouth High School, from printing the Portsmouth High School 2006-2007 yearbook without the unedited yearbook portrait chosen by Petitioner Patrick Agin on the grounds set forth in the accompanying memorandum.

Thomas Connolly, No. 7497
VETTER & WHITE
Attorneys for Petitioner
20 Washington Place
Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 FAX

NEWPORT SC. ... COURT
FILED
JANE M. ... CLERK
06 DEC 11 PM 4:13

Dated: December 11, 2006

True Copy Attest
Jane M. Anthony
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

CERTIFICATE OF SERVICE

To: Stephen M. Robinson
The Law Offices of Stephen
M. Robinson
Attorney for Portsmouth
School Committee
155 South Main St.
Providence, R.I. 02903

I hereby certify that I served on the above-named party a copy of the within Motion of Plaintiff for a Temporary Restraining Order with memorandum in support thereof by hand, on the 11 day of December, 2006.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

STATE OF RHODE ISLAND
NEWPORT, SC

SUPERIOR COURT

PATRICK AGIN by and through his mother HEIDI FARRINGTON, PLAINTIFF,

vs.

PORTSMOUTH SCHOOL COMMITTEE, SYLVIA WEDGE, MICHAEL BUDDEMEYER, E. RICHARD CARPENTER, JAMIE R.B. HEANEY, TERRI D. CONTRIVEND, DOUGLAS L. WILKEY, MARJOURIE LEVESQUE, in their capacities as members of the Portsmouth School Committee, and ROBERT LITTLEFIELD, in his capacity as Principal of Portsmouth High School, DEFENDANTS.

NC06-0609

2006 DEC 11 PM 4:13

## MEMORANDUM IN SUPPORT OF MOTION OF PLAINTIFF FOR A TEMPORARY RESTRINING ORDER

### I. Introduction

Patrick Agin, by and through his mother, Heidi Farrington, plaintiff, moves for a temporary restraining order preventing defendants Portsmouth School Committee and its members, in their official capacities, and Robert Littlefield, in his official capacity as Principal of Portsmouth High School, from printing the Portsmouth High School 2006-2007 yearbook without the photograph submitted for inclusion by Patrick.

### II. Facts

This dispute centers on the decision of Portsmouth High School Principal Robert Littlefield to prohibit the publication of Portsmouth High School senior Patrick Agin's photograph in the School's yearbook. Upon information and belief, the yearbook

True Copy Attest
Jane M. Anthony
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

will be sent to the printer on Monday, December 18. In the photograph, attached as Exhibit 1, Patrick is dressed in medieval chain mail and is holding a broad sword. The sword and chain mail are historically accurate representations of those items and could both have been seen on a person from the medieval era. They reflect Patrick's sincere and long-time interest in medieval studies and reenactment. This fact is corroborated by his membership for the past year and a half in the Society for Creative Anachronism, an organization whose purpose is to promote research and reenactment of medieval and Renaissance history. Additionally, Patrick has been a dressed participant in Renaissance festivals for the past three or four years. Prior to participating in such festivals, Patrick and his family attended them for many years.

Plaintiff hereby incorporates throughout all facts and allegations from the Verified Complaint filed herewith.

## III. Argument

A temporary restraining order may be granted if the moving party establishes:

1) a likelihood of success on the merits;
2) irreparable injury for which no adequate remedy at law exists;
3) the balancing of the equities tips in the plaintiff's favor weighing the hardships imposed by the parties in granting or denying the requested order; and
4) the public interest favors issuance of the order.

Martin v. Lincoln Bar, Inc., 622 A.2d 464, 469 (R.I. 1993); see also, Fund for Community Progress v. United Way of Southeastern New England, 695 A.2d 577 (R.I. 1997).

### A. Likelihood of Success on the Merits

True Copy Attest
Jane M. Anthony
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

The federal statute entitled "Civil Action for Deprivation of Rights," 42 U.S.C. § 1983, provides that:

> Every person who, under color of any statute, ordinance, regulation, custom or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity or other proper proceeding for redress....

The United States Supreme Court has held that state courts have jurisdiction over §1983 claims. Howlett v. Rose, 496 U.S. 356 (1990).

In order to prevail in a §1983 action a plaintiff must establish that 1) there was state action, and 2) that action deprived the plaintiff of a right, privilege or immunity held under the federal Constitution or the laws of the federal government.

**1. Principal Littlefield's Refusal to Include Patrick's Photograph in the Yearbook was State Action**

Principal Littlefield is a School officer hired pursuant to the Portsmouth School Committee's statutory power under R.I.G.L. § 16-2-9. As an officer of the Portsmouth Schools he is a state actor. Monell v. Dept. of Social Services, 463 U.S. 658 (1978). "The essential state action inquiry is whether the government has been sufficiently involved in the challenged actions that it can be deemed responsible for the plaintiff's claimed injury." Yeo v. Town of Lexington, 131 F.3d 241, 249 (1st Cir. 1997) (hereafter Yeo II).

Although the First Circuit sitting en banc in Yeo II found that there was no state action in the refusal to include abstinence advertisements in a yearbook, the court did so expressly because of the independence of the student yearbook board in that case.

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

The First Circuit's decision in Yeo II was expressly dependent upon the district court's finding that "The students did not consult with [their faculty advisor] or any other member of the faculty or administration prior to making this decision." Yeo II, 131 F.3d at 245.

In newspaper interviews, conversations and letters, Principal Littlefield has repeatedly asserted that it is his decision whether or not content may be published in the yearbook. Moreover, the submission notice sent out to seniors expressly affirmed that point by providing that "blurbs" and "remember when's" "will be read by [Principal] Littlefield and will be edited for profanity and any inappropriate statements." Exhibit 3.

In this conflict it cannot be doubted that Principal Littlefield made the challenged decision. While Principal Littlefield, on one occasion, suggested that students on the yearbook staff, and the yearbook's faculty advisor also disapproved of the photograph, it is clear that the decision was his. Exhibit 2. Only after confirming that "[he is] often required to make decisions that strike a balance between personal expression on (sic) students and the general interests of the school…" and that he "believe[d] it is not in the in the best interests of our school…," did Principal Littlefield even mention any student involvement. As a mere afterthought, he wrote to Ms. Farrington that the yearbook staff and its advisor felt the picture was inappropriate. He has made only this one attempt to distance himself from that decision in his November 28, 2006, letter to Ms. Farrington. Exhibit 2.

Principal Littlefield can not now disclaim his decision-making role and he can not rest on the speculative proposition that, if the students were the decision-makers,

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

they would not have published the photograph. Principal Littlefield made the decision. He is a state actor. The disputed decision is subject to constitutional constraints.

## 2. Principal Littlefield's Refusal to Include Patrick's Photograph in the Yearbook Violates Patrick's Constitutional Right to Free Expression

The majority of courts that have addressed the issue have held that a school yearbook constitutes a public forum.[1] Kincaid v. Gibson, 236 F.3d 342, 356 (6th Cir.2001)("As a creative publication, [a college yearbook was]… easily distinguished from other government fora whose natures are not so compatible with free expression [such as a federal work place or prison]."); Yeo v. Lexington, 1997 WL 292173, *9 (1st Cir. 1997)(hereafter "Yeo I")(advertising section of high school yearbook is public forum) *overruled on other grounds by* Yeo II, 131 F.3d 241; Stanton v. Brunswick School Department, 577 F.Supp. 1560 (D. Me. 1984).

In Stanton, a high school student, in lieu of her senior yearbook statement, wished to use a graphic quote from a magazine describing what happens when a person is executed by electrocution. Id. at 1561. In finding that the yearbook was a public forum, the Stanton court reasoned that the yearbook was provided by the school as "a vehicle for

[1] To the best of plaintiff's knowledge, the only case in which a court found a yearbook similar to the one here to be a nonpublic forum was Douglass v. Londonderry School Bd., 372 F.Supp.2d 203 (D.N.H. 2005)(decided on grounds that there was no state action). In dicta the court stated that the yearbook was "at best a nonpublic forum," Douglass, 372 F.Supp.2d at 211-12, that critical proposition, which was made with no significant analysis, is against the great weight of authority and eviscerates any distinction between a public forum and a nonpublic forum. The Douglass court then simply a[illegible] of Hazelwood Sch. Dist. v Kuhlmeier, 484 U.S. 260 (1988), and, once having found a nonpublic forum, the school's restriction based on mere reasonableness. 372 F.Supp.2d at 212. The above cited cases make clear that Hazelwood has "little application" to situations like the one here, Kincaid, 236 F.3d at 346 n.5, where the forum is not a supervised classroom learning experience.

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

the expression and transmission of personally-held views on matters of importance to senior students." 577 F.Supp. at 1570.

As in Stanton, the Portsmouth High School yearbook is a forum provided by the School "... for the expression and transmission of personally-held views on matters of importance to senior students." Id. Students were invited to provide senior portrait photographs taken in clothes and in settings that reflected their values for inclusion in the yearbook. Exhibit 3. They were invited to provide pictures of themselves as babies, pictures of their friends, and to draft personal statements, "blurbs" about themselves and reminiscences. Id. Students' yearbook statements are expressions of their own interests and their own selves. Likewise, students' pictures, which are taken off of School grounds, by photographers of the student's choosing, and dressed in clothing of the student's choosing, are expressions of their interests. See Newsom v. Albemarle County School Board, 354 F.3d 249 (4th Cir.2003) (holding that clothes bearing pictures of guns were protected speech).

Students express themselves as individuals through both their comments and photographs, preserving for posterity their individual likes, dislikes and interests. The yearbook is not part of a curriculum or in-class project. It is essentially a bulletin board posted by the School for the purpose of allowing seniors to express themselves.

To the extent that the government (here, defendants) wishes to limit such a public forum, that limitation must be "anchored in the purposes served by the forum" and the government must set the boundaries of such limitations and must respect those boundaries once they are set. Yeo I, 1997 WL 292173, *9 (quoting Rosenberg v. Rector & Visitors of Univ. of Va., 515 U.S. 819, 829 (1995)).

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

Because it is a public forum, content-based[2] restrictions are subject to strict scrutiny. Deida v. City of Milwaukee, 176 F.Supp.2d 859, 866 (E.D. Wis. 2001) (citing Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 45 (1983)). Restrictions on such student speech should be upheld only if the School has reason to believe that the speech will "substantially interfere with the work of the school or impinge upon the rights of other students." Tinker v. Des Moines Indep. Community School Dist., 393 U.S. 503, 509 (1969). The regulation must be narrowly tailored to serve a significant government interest. Slotterback v. Interboro School Dist., 766 F.Supp. 280, 293 (E.D. Pa. 1991).

If indeed the yearbook were deemed a limited public forum, what are those limits? The only limit annunciated by defendants is Principal Littlefield's unlimited and subjective sense of what he deems "inappropriate." It is inconceivable that this standard could be considered **narrowly tailored** to serve a significant government interest.

Once again the court's ruling in Stanton is instructive. After determining that the yearbook was a public forum, the court found that the standards used in rejecting the graphic statement of electrocution – "poor taste" or "appropriateness" – were not standards at all. Stanton, 577 F.Supp. at 1574 ("[Such a standard] fixes no discrete, objective limits to the determination of what may or may not be published therein. That test must always be, by such standards, completely subjective in at least two respects; what the official making the decision as to publishability thinks to be 'tasteful' or

---

[2] Principal Littlefield's prohibition against Patrick's photograph is a content-based restriction on Patrick's right of free expression because it was based upon the presence of the sword (i.e. content) in the photograph. See 16A Am Jur 2d § 459. If, for instance, Patrick had been holding a football or baseball bat rather than a sword, there is no suggestion that the photograph would have been deemed "inappropriate."

True Copy Attest
Clerk of Superior Court
Newport, Rhode Island

'appropriate' *and* what that official believes others may think to be so." [emphasis in original]).

As in <u>Stanton</u>, the standard used by Principal Littlefield in excluding Patrick's photograph is purely a subjective one. As such, and as the court held in <u>Stanton</u>, Principal Littlefield's action cannot satisfy the requirements of the federal or Rhode Island Constitutions.

3. **<u>The Weapons Policy is Inapplicable Both on its Face and in Light of the Manner that Policy has Heretofore Been Applied</u>**

Principal Littlefield has repeatedly and primarily relied on the School's weapons policy as the grounds for excluding Patrick's photograph from the yearbook. The policy, entitled "WEAPONS AND VIOLENCE IN SCHOOLS," states in relevant part:

> The purpose of this policy is to ensure a school environment that is conducive to learning. The underlying belief of this policy is that all children have the right to be educated in a safe and nurturing environment. Therefore, each school shall enforce a policy of zero tolerance for weapons and violence in schools.

Portsmouth School Committee Policy 5700 (last revised November 14, 1995). Attached as Exhibit 4.

Despite a litany of examples, the weapons policy makes **<u>no</u>** reference to photographs of weapons on School grounds or at School activities, and certainly does not reference those photographs which do not promote, encourage, or condone the use of violent actions, such as the photograph Patrick submitted.

The weapons policy by its terms is limited to activities which take place "in school." Furthermore, it explicitly prohibits actual assaults only when they take place on "school grounds" or at "school activities." Its definition of the terms "school grounds"

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

and "school activities" makes no reference to School publications. Moreover, the weapons policy provides "*Possession of a weapon* at school or a school activity will result in ... [various penalties]" (emphasis added), but provides no penalty for depiction of a weapon at school or a school activity.

It is abundantly clear that the weapons policy neither contemplated, nor was intended to apply to Patrick's photograph. To stretch the ambit of this policy to photographic depictions of weapons in School publications would produce absurd results. Emmanuel Leutz's famous painting of George Washington, sword at his hip, crossing the Delaware River on Christmas Eve, Exhibit 5, would be rendered verboten by such an interpretation. Surely this image is found somewhere among the books of the School's library. Peter Pan with his knife, Exhibit 6, a pilgrim with his musket, Exhibit 7, even the School's own mascot, a patriot shown variously with a gun and a sword, would be impermissible under this expansive reading of the weapons policy.

Perhaps most confusing is why Patrick's photograph would violate the weapons policy if it were to appear in the senior portrait section of the yearbook, but, as suggested by Principal Littlefield, would be acceptable if it were exiled to the paid advertising section of the yearbook.

In any case, the weapons policy has been applied more fluidly even within the School than is suggested by Principal Littlefield's current interpretation. The School has staged theatrical performances on School property which utilized prop weapons, and such props are available in the theater department. Also, as of November 20, 2006, the School's website contained several pictures of students dressed in what appear to be Halloween costumes incorporating fake guns and swords. Exhibit 8. These examples

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

might **actually** constitute a violation of the terms of the weapons policy, which prohibits objects "which by virtue of … [their] shape or design gives the appearance of" weapons.

In no way does plaintiff suggest that these items ought to be cast from the School. Quite the opposite, their inclusion in the School shows a reasoned application of the weapons policy. Their inclusion shows an awareness that context matters and it demonstrates an ability on the part of the School officials to distinguish – by context – disruptive and dangerous expression from innocent and even beneficial expression. The School's fluid application of the weapons policy in the past, perhaps more than anything else, debunks any fire and brimstone prophecy that the School would lose control without the bright line application of the weapons policy to which Principal Littlefield has subjected Patrick's photograph.

**4. <u>Conclusion</u>**

Principal Littlefield has repeatedly stated that the decision not to permit the photograph to be published with the other senior portraits was his. There is no credible doubt as to the sincerity of Patrick; that his intent in submitting the photograph was to express the importance of medieval history to him. There is, further, no credible doubt that – notwithstanding the dubious and unprecedented application of the weapons policy – Patrick's photograph does not "substantially interfere with the work of the school or impinge upon the rights of other students." <u>See</u> <u>Tinker</u>, 393 U.S. at 509 (1969). The exclusion of Patrick's photo was not the product of a narrowly drawn regulation tailored to serve a significant government interest. As such, it is likely that plaintiff will succeed on the merits in proving that 1) the action of defendants in excluding the

True Copy Attest
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

photograph was state action, and 2) that such action violated plaintiff's constitutional right to free expression.

**B. Irreparable Injury**

"It is well established that the loss of First Amendment freedoms constitutes irreparable injury." Maciera v. Pagan, 649 F.2d 8, 18 (1st Cir. 1981) (citing Elrod v. Burns 427 U.S. 347 373 (1976)). Also, the yearbook is perhaps the last and best chance Patrick has to express himself to the classmates with whom he has grown over the past several years of his life. A high school yearbook is often one of the most enduring expressions of who a person was at a crossroad in his or her life, and is typically looked back upon fondly years later. The loss of this constitutionally protected expression is plainly irreparable, and, in this context, is particularly damaging.

**C. Balancing of the Equities**

As to the balancing of the equities regarding any added cost that may be alleged by defendants, Stanton is once again poignant:

> Even if it were so shown, those [added] charges would hardly constitute irreparable injury by comparison to the harm that would be done to Plaintiff's constitutionally-protected First Amendment rights by presently scheduled publication of the yearbook without inclusion of her designated quotation.

577 F.Supp. at 1568. Moreover, the time constraints that plaintiff necessitate a temporary restraining order are the product of Principal Littlefield's delay in voicing his decision.

Patrick submitted the photograph to the yearbook prior to the September 29 deadline. When Patrick asked in October whether the photograph would be included in the yearbook, Principal Littlefield stated that a decision had not yet been made.

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

Principal Littlefield then did not announce his decision to exclude the photograph until after Thanksgiving holiday, and, even then, only when approached by Ms. Farrington.

It is plain, given the irreparability of Plaintiff's damages, the relative lack of burden to defendants, and the lack of timeliness of Principal Littlefield's decision, that the equities fall heavily in plaintiff's favor.

## D. <u>The Public Interest</u>

The public interest would be served by the protection of Patrick's constitutional rights. The courts have acknowledged the public interest in an active "marketplace of ideas" of paramount importance. <u>Sheck v. Baileyville School</u> Committee, 530 F.Supp. 679, 693. It is the First Amendment that ensures the health of that marketplace.

WHEREFORE, plaintiff asks this Court to grant its request for a temporary restraining order preventing defendants from printing the Portsmouth High School 2006-2007 yearbook without the unedited yearbook portrait chosen by plaintiff.

Plaintiff,
Heidi Farrington,
by and through her attorneys,

Thomas Connolly (No. 7497)
George E. Lieberman (No. 3060)
VETTER & WHITE
Rhode Island Affiliate,
American Civil Liberties Union
Attorneys for Plaintiffs
20 Washington Place

True Copy Attest
Jana M. Ancloy
Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

Providence, Rhode Island 02903
(401) 421-3060
(401) 272-6803 (FAX)

Dated: December 11, 2006

True Copy Attest

Jane M. Anthony

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island

CERTIFICATE OF SERVICE

To: Stephen M. Robinson
The Law Offices of Stephen
M. Robinson
Attorney for Portsmouth
School Committee
155 South Main St.
Providence, R.I. 02903

I hereby certify that I served on the above-named party a copy of the within Memorandum in Support of Motion of Plaintiff for a Temporary Restraining Order with memorandum in support thereof by hand, on the 11 day of December, 2006.

True Copy Attest

Office of Clerk of Superior Court
County of Newport
Newport, Rhode Island