**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PATRICK AGIN, by and through his mother HEIDI FARRINGTON,** | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. No. 06-540 S** |
| | : | |
| **PORTSMOUTH SCHOOL COMMITTEE, SYLVIA WEDGE, MICHAEL BUDDEMEYER, E. RICHARD CARPENTER, JAMIE R.B. HEANEY, TERRI D. CONTRIVEND, DOUGLAS L. WILKEY, MARJOURIE LEVESQUE, in their capacities as members of the Portsmouth School Committee, and ROBERT LITTLEFIELD, in his capacity as Principal of Portsmouth High School,** | : | |
| **Defendants** | : | |

## ENTRY OF APPEARANCE

I, the undersigned, hereby enter my appearance as attorney for the Defendants in the above-captioned matter..

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903-7115
(401) 331-6565
(fax) 331-7888
December 13, 2006
srobinson@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on December 14, 2006 I sent a true copy of the within by electronic filing to all of the parties below:

Thomas Connolly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Vicki J. Bejma

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PATRICK AGIN, by and through his mother HEIDI FARRINGTON,** | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. No. 06-540 S** |
| | : | |
| **PORTSMOUTH SCHOOL COMMITTEE, SYLVIA WEDGE, MICHAEL BUDDEMEYER, E. RICHARD CARPENTER, JAMIE R.B. HEANEY, TERRI D. CONTRIVEND, DOUGLAS L. WILKEY, MARJOURIE LEVESQUE, in their capacities as members of the Portsmouth School Committee, and ROBERT LITTLEFIELD, in his capacity as Principal of Portsmouth High School,** | : | |
| **Defendants** | : | |

**<u>OBJECTION TO MOTION FOR TEMPORARY RESTRAINING ORDER</u>**

Now come the Defendants, and object to Plaintiff's Motion for Temporary Restraining Order. In support of said objection, Defendants rely on their Memorandum, attached hereto and made a part hereof.

Respectfully submitted,
Defendants,
By Their Attorneys,

<u>/s/ Stephen M. Robinson</u>
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903-7115
(401) 331-6565
(fax) 331-7888
December 13, 2006
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903-7115
(401) 331-6565
(fax) 331-7888
December 13, 2006
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on December 14, 2006 I sent a true copy of the within by electronic filing to all of the parties below:

Thomas Connolly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Vicki J. Bejma

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF RHODE ISLAND**

| | | |
|---|---|---|
| **PATRICK AGIN, by and through his mother** | : | |
| **HEIDI FARRINGTON,** | : | |
| **Plaintiff** | : | |
| | : | **C.A. No. 06-540 S** |
| | : | |
| **PORTSMOUTH SCHOOL COMMITTEE,** | : | |
| **SYLVIA WEDGE, MICHAEL BUDDEMEYER,** | | : |
| **E. RICHARD CARPENTER, JAMIE R.B. HEANEY,** | : | |
| **TERRI D. CONTRIVEND, DOUGLAS L. WILKEY,** | : | |
| **MARJOURIE LEVESQUE, in their capacities as** | : | |
| **members of the Portsmouth School Committee, and** | : | |
| **ROBERT LITTLEFIELD, in his capacity as Principal** | : | |
| **of Portsmouth High School,** | : | |
| **Defendants** | : | |

**MEMORANDUM IN SUPPORT OF DEFENDANTS'**
**OBJECTION TO MOTION FOR TEMPORARY RESTRAINING ORDER**

## I. FACTS AND TRAVEL

This matter comes before this Honorable Court on Plaintiff's Verified Complaint and Motion for Temporary Restraining Order. The gravamen of this dispute is whether the Plaintiff, a senior at the Portsmouth High School, has full freedom of expression in the context of formal yearbook portrait. As the Plaintiff alleges, his enthusiasm for re-enactments of the medieval area is such that he wishes to have printed a picture of him in a knight's costume, brandishing a sword. When the yearbook staff refused to publish this photograph, Plaintiff turned his focus from medieval studies to Constitutional litigation. Not only does the Plaintiff demand that his photograph be printed, but he also seeks to halt printing of the yearbook during the pendency of this matter.

By way of background, the Portsmouth High School yearbook, *The Legend*, is produced by the students enrolled in the High School's Principles of Publishing course. The Principles of Publishing course is a for-credit, academic course designed to teach students about the publishing industry from the technical, artistic, and industrial point of view. The students produce the yearbook as one of the class projects. One student is assigned the role of editor-in-chief, and others are assigned the role of editors of various sections of the yearbook. (See Affidavit, appended hereto as Exhibit A.)

Content is initially decided by the student editors. However, the teacher might override the student editors' decisions regarding the appropriateness of content. For example, the teacher has rejected potential photographs submitted by the students for publication because the student was depicted wearing a t-shirt containing profanity, or advertisements for alcohol. (Exhibit A.) In the past, the teacher of the class has also consulted with the Principal of Portsmouth High School, Defendant Robert Littlefield, regarding the appropriateness of student submissions. On at least two occasions prior to the instant situation, students have proposed to have published in the formal portrait section pictures of themselves carrying weapons. One such student wished to carry her marksman's rifle. Another student, who like the Plaintiff enjoyed historical re-enactment, wished to be photographed in a Civil War uniform, complete with a rifle. Principal Littlefield was consulted regarding these photographs, and deemed them inappropriate for the formal portrait section due to the fact that they contained weapons. (Exhibit A.)

When Plaintiff first submitted his desired photograph to the yearbook for publication in the formal portrait section, the yearbook teacher and editorial staff deemed said photograph inappropriate due to the depiction of the weapon. In mid-October, the teacher and editorial staff approached Principal Littlefield regarding the matter, as they had done in the past. Principal

Littlefield concurred with yearbook personnel's judgment. Later, Plaintiff and his mother approached Principal Littlefield, importuning him to overturn the judgment of the yearbook personnel. Principal Littlefield refused to do so, but indicated that he believed that the picture could be edited to remove the weapon. (Exhibit A.) However, Plaintiff's mother refused to accept this solution. Additionally, the photographer who took the picture threatened legal action if the photograph were altered without permission. (Exhibit A.)

The Plaintiff proceeded directly from the Principal's office to the courthouse, claiming that his rights to freedom of expression were being violated. Significantly, the Portsmouth School Committee had been prepared to hear this matter on the evening of December 12, 2006. Instead, the Plaintiff filed this matter in the Newport County Superior Court on the December 11, 2006, and expressly refused to appear before the School Committee. (Exhibits B and C.) A hearing on the Motion for Temporary Restraining Order was instead scheduled in Newport County for December 14, 2006. The next day, December 13, 2006, Defendants removed this matter to this Court pursuant to 28 U.S.C.A. § 1441. Plaintiff then renewed his Motion before this Court. However, for reasons which we will describe, Plaintiff simply is not entitled to immediate relief at this juncture, and in fact does not even have a meritorious action. Accordingly, his Motion must be denied.

## II. LEGAL ARGUMENT

The Plaintiff has failed to satisfy the rigorous demands placed upon those who would seek injunctive relief. Those who would have the extraordinary relief of a temporary restraining order must be prepared to establish that: 1) there is a high likelihood of success on the merits of the claim; 2) immediate and irreparable harm will result without injunctive relief; 3) there is no adequate remedy at law; and 4) taking into account the public interest, the balancing of the

equities favors the granting of the temporary restraining order. *See* Ross-Simons of Warwick, Inc. v. Baccarat, Inc., 66 F.Supp.2d 317, 326 (D.R.I. 1999). Where, as here, the injunction is of a mandatory nature, the right must be very clear, and the need must be particularly urgent. *See* Giacomini v. Bevilacqua, 118 R.I. 63, 372 A.2d 66 (1977). Under the circumstances here, the Plaintiff cannot establish the likelihood of immediate and irreparable harm without injunctive relief. Furthermore, the Plaintiff has little likelihood of success on the merits of his claim that the Defendants violated his rights to freedom of expression.

In the first instance, Plaintiff's First Amendment rights are not in such grave peril as he appears to believe. The Plaintiff apparently would have it that if he is not given immediate relief, he will forever lose his alleged rights to freedom of expression due to a yearbook publication deadline of December 18, 2006. The situation at hand is not as dire as the Plaintiff alleges. Instead, there are multiple opportunities for the Defendants to amend the yearbook after December 18, 2006. Although this later amendment would involve some expense, the Defendants are agreeable to undertaking said expenses. (See Affidavit, appended hereto as Exhibit A.) Plaintiff, then, would still have the opportunity to have his chosen picture published even the December 18, 2006 deadline passed before a full hearing.[1] Accordingly, Plaintiff cannot satisfy the prerequisite of injunctive relief, that of immediate and irreparable harm. On that basis alone, he should be denied a temporary restraining order.

On a somewhat related note, the Plaintiff also should be denied relief in that there are adequate legal avenues of relief available to him that he has failed to explore. The Plaintiff was given the opportunity to appear before the School Committee for review of this matter. Pursuant

---

[1] On the other hand, if Portsmouth is forbidden to publish at all without the Plaintiff's chosen photo, they incur substantial penalties. (Exhibit A.)

to R.I.G.L. § 16-2-9, the School Committee is the public body empowered to establish policy for the School Department as a whole, and would have been able to provide relief. The School Committee was in fact fully prepared to hear Plaintiff's matter on the night of December 12, 2006. Had the Plaintiff taken advantage of this opportunity, he could have received relief well before the December 18, 2006 deadline. Nevertheless, the Plaintiff declined this offer, apparently preferring to throw down his gauntlet in Newport County. (Exhibits B and C.) The School Committee, of course, could be petitioned subsequent to December 18, 2006, and, if the Plaintiff were successful, the yearbook could be amended as described above.

Given the readiness and willingness of the School Committee to hear this matter, along with the ability to grant meaningful relief in the form of an amendment to the yearbook, Plaintiff clearly has an adequate legal remedy available to him. Because of the availability of this legal remedy, Plaintiff is unable to fulfill yet another prerequisite to obtaining injunctive relief, that is, the lack of an adequate legal remedy. Plaintiff should at least be required to exhaust the option of giving the School Committee the option to decide policy in this area before the Court intervenes in day-to-day school affairs. Because he has not done so, he should be denied injunctive relief at this time.

Finally, the Plaintiff cannot establish a likelihood of success on the merits. Plaintiff has proceeded under 42 U.S.C.A. § 1983, the Civil Rights Act. However, in order to succeed on the merits, he must be prepared to show that he was deprived of his right to freedom of expression by a state actor. *See* Yeo v. Town of Lexington, 131 F.3d 241, 248-49 (1st Cir. 1997). In this case, it was the student editors that made the decision that the Plaintiff's proposed photograph was inappropriate. Principal Littlefield merely concurred with the students' initial judgment, and refused to force them to change that judgment. (Exhibit A.) It is by now well-settled that student

staff of a yearbook acting autonomously cannot be fairly deemed "state actors." See id. at 254-55. This is so even when a school administrator retains the authority to overrule student decisions, or endorses them. *See* Douglass v. Londonderry Sch. Bd., 372 F.Supp.2d 203, 208 (D.N.H. 2005)

The Plaintiff instead appears to be attributing the decision not to publish the desired picture primarily to Principal Littlefield. Even if this attribution were correct, the Plaintiff still is not entitled to relief. Simply put, the Plaintiff has applied the wrong legal standards to his situation. Plaintiff apparently would have it that ***all*** school yearbooks are ***per se*** limited public fora. (Plaintiff's Memorandum, p. 5-7.) This position represents a great oversimplification of the law regarding school publications. It is true that some cases have held that a school yearbook or student newspaper is a limited public forum. For example, the chief case upon which Plaintiff relies, that of Stanton v. Brunswick Sch. Dept., 577 F.Supp.1560 (D. Me. 1984), appears to have treated a yearbook as a limited public forum. However, since Stanton, the U.S. Supreme Court has clarified the circumstances under which a student publication should be deemed a limited public forum. In the case of Hazelwood Sch. Dist. v. Kuhlmeier, 484 U.S. 260 (1988), the U.S. Supreme Court held that a school yearbook, student newspaper, or other school publication is not always necessarily a limited public forum. That question can only be decided after a careful study of the level to which the school has exercised control over that particular publication, or left it open for individual student expression.

The Hazelwood case involved a high school newspaper. Said newspaper was written and edited by a journalism class, which was largely funded by the school district. Under the standard practice, the principal always reviewed proofs of the paper prior to its publication. On one occasion, the principal deleted two articles that he found inappropriate. One dealt with teenage

pregnancy, and the other with divorce. Id. at 262-63. Both articles featured interviews with members of the school's student body regarding their own personal experiences. The principal found the article regarding teenage pregnancy objectionable because he believed that the article's discussions of sexual activity and birth control were inappropriate for the younger students in the school. Additionally, although false names were used in the pregnancy article containing student interviews, the principal felt that the students interviewed could still be identified from the text as a whole. Id. at 263. The principal also found the article regarding divorce objectionable, because one of the students interviewed had been very critical of her father's behavior after her parents' divorce. That parent was neither given an opportunity to respond to the student's remarks, nor had the student's parents given permission to publish said remarks. Id.

The students who were staff members of the newspaper challenged the principal's deletion of the articles, alleging that their First Amendment rights to freedom of expression had been violated. Id. at 264. On appeal, the Hazelwood Court upheld the principal's actions. First, the Hazelwood Court determined that the student newspaper in question was not properly understood as a public forum for student expression. Such a public forum exists only where there is a "clear intent to create a public forum." Id. citing Cornelius v. NAACP Legal Defense & Educational Fund, Inc., 473 U.S. 788, 802, 105 S.Ct. 3439, 3449-50 (1985). A review of the history of the publication in question showed that the newspaper had consistently been part of an academic course, subject to control by school officials. Accordingly, no intention to create a public forum for general student expression could be inferred; the intention was and always had been to provide a "supervised learning experience" for journalism students. For that reason, the limitations normally placed on a government official's right to control speech in a public forum did not apply. Id. at 269-70.

The Hazelwood Court also drew a sharp distinction between the situation before it, and other situations in which students' rights to freedom of expression had been upheld, such as in Tinker v. Des Moines Ind. Community Sch. Dist., 393 U.S. 503, 89 S.Ct. 733, 21 L.Ed.2d 731 (1969). In cases such as Tinker. Id. at 271-70. In cases such as Tinker, the issue was whether a school official could limit student speech that happened to take place at school. On the other hand, the student newspaper at issue in Hazelwood presented a much different set of issues. At issue in situations such as the student newspaper was a school's ability to exercise editorial control over school publications that ". . . members of the public might reasonably perceive to bear the imprimatur of the school." Id. at 271. The Hazelwood Court considered such activities as ". . . part of the school curriculum, whether or not they occur in a traditional classroom setting, so long as they are supervised by faculty members and designed to impart particular knowledge or skills to student participants and audiences." Id. In that setting, the school officials must have far more editorial control in order to preserve its educational mission. Id. at 272. As the Hazelwood Court concluded:

> Accordingly, we conclude that the standard articulated in *Tinker* for determining when a school may punish student expression need not also be the standard for determining when a school may refuse to lend its name and resources to the dissemination of student expression. Instead, we hold that educators do not offend the First Amendment by exercising editorial control over the style and content of student speech in school-sponsored expressive activities so long as their actions are reasonably related to legitimate pedagogical concerns.
>
> This standard is consistent with our oft-expressed view that the education of the Nation's youth is primarily the responsibility of parents, teachers, and state and local school officials, and not of federal judges. See, *e.g., Board of Education of Hendrick Hudson Central School Dist. v. Rowley,* 458 U.S. 176, 208, 102 S.Ct. 3034, 3051, 73 L.Ed.2d 690 (1982); *Wood v. Strickland,* 420 U.S. 308, 326, 95 S.Ct. 992, 1003, 43 L.Ed.2d 214 (1975); *Epperson v. Arkansas,* 393 U.S. 97, 104, 89 S.Ct. 266, 270, 21 L.Ed.2d 228 (1968). It is only when the decision to censor a school-sponsored publication, theatrical production, or other vehicle of student expression has no valid educational purpose that the First Amendment is so

> "directly and sharply implicate[d]," *ibid.*, as to require judicial intervention to protect students' constitutional rights.

Id. at 273-74. In short, where a school-sponsored publication is at issue, the ultimate test is one of reasonableness. Where a school is sponsoring a publication, it may control content as it sees fit. The students' rights are violated in these matters only where no reasonable educational justification can be found for the control of content.

Under the circumstances, Hazelwood should be deemed to apply to this situation. Much like the student newspaper in Hazelwood, the Portsmouth High School yearbook is generated as part of an academic course in which students learn certain publishing tasks, and are graded upon their performance. (Exhibit A.) As such, the yearbook is not properly understood as a limited public forum. Instead, it can only be deemed to be a publication that bears the imprimatur of the school, and can be subjected to reasonable editorial control by the administration. Furthermore, the decision not to publish a photograph in which a student brandished a weapon is certainly one implicating a reasonable educational concern. The presence of weapons and violence in our schools has been an overwhelming concern for every community. It was in response to this that Portsmouth, in common with every other district in this state, established a "zero tolerance" policy for weapons, including replicas thereof. (Exhibit A.) The decision not to print a photograph of a student bearing a weapon in a school-sponsored publication was entirely in keeping with that policy. Therefore, the Plaintiff cannot claim that the refusal to publish his desired photograph is so unreasonable as to implicate his rights to free speech.

The "no-weapons" policy also serves another reasonable purpose, in terms of administrative simplicity. If the yearbook were to permit students to publish pictures of themselves with weapons in the formal portrait section, the editors of the yearbook would

constantly be drawn into battles over the appropriateness of the portrait. For example, if a student were to pose in the attire of one of the Columbine assailants, complete with weapon, the yearbook staff would potentially have to engage in debate over whether that was inappropriate. The ability to avoid such line-drawing controversies has been identified as a legitimate concern in the high school yearbook setting. *See* Douglas v. Londonderry Sch. Bd., 413 F.Supp.2d 1, 8 (D.N.H. 2005).

We anticipate that the Plaintiff will argue that the concerns expressed by Principal Littlefield are undermined by the fact that he was offered the option of publishing his photograph in the advertising section. This argument is a red herring. The advertising section has traditionally been the site of portraits that were highly informal, even comical. This section is paid for by the students and/or their parents. It also is not the "centerpiece" of the book, as is the formal portrait section. (Exhibit A.) As such, the presence of a student with a weapon in the advertising section would not be understood be taken as undermining the school's position on weapons.

Given the posture of this matter, then, the Plaintiff should not be granted injunctive relief. Even if the Plaintiff were to bring this matter to the School Committee and/or bring this matter to a full hearing before this Court, there would be more than ample time to put his desired picture in the yearbook -- without expense to himself. Portsmouth, on the other hand, would incur substantial penalties for the delay. (Exhibit A.) In any case, he cannot clearly establish that a state actor deprived him of his ability to publish exactly the portrait that he wished. Finally, given that the yearbook is a school-sponsored publication, the school maintained reasonable editorial control. Accordingly, Plaintiff is not entitled to have this Court come immediately galloping to the rescue of his alleged right to freedom of expression.

## III. CONCLUSION

For the above-referenced reasons, the Plaintiff's Motion for Temporary Restraining Order should be DENIED.

Respectfully submitted,
Defendants,
By Their Attorneys,

/s/ Stephen M. Robinson
Stephen M. Robinson #2103
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903-7115
(401) 331-6565
(fax) 331-7888
December 13, 2006
srobinson@smrobinsonlaw.com

/s/ Vicki J. Bejma
Vicki J. Bejma #6498
The Law Offices of Stephen M. Robinson
155 South Main Street, Suite 402
Providence, RI 02903-7115
(401) 331-6565
(fax) 331-7888
December 13, 2006
vbejma@smrobinsonlaw.com

**CERTIFICATION**

I, the undersigned, hereby certify that on December 14, 2006 I sent a true copy of the within by electronic filing to all of the parties below:

Thomas Connolly, Esq.
Vetter & White
20 Washington Place
Providence, RI 02903

/s/ Vicki J. Bejma